'08 CIV 5706

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EVENT CAPTURING SYSTEMS, INC. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action. No. |
| v. | ) | |
| | ) | |
| KOBAYASHI VENTURES, LLC | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

JUN 24 2008

## DECLARATORY JUDGMENT COMPLAINT
## AND
## COMPLAINT FOR AFFIRMATIVE MONETARY RELIEF

### (*Jury Trial Demanded*)

COMES NOW Plaintiff Event Capturing Systems, Inc. ("ECS") and files this Complaint for

a Declaratory Judgment against Defendant Kobayashi Ventures, LLC (hereinafter "Kobayashi").

Plaintiff respectfully alleges and states the following:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332 (a)(1),

(b) and (c)(1), 28 U.S.C. § 1338, 28 U.S.C. § 1367, 28 U.S.C. § 2201, and 28 U.S.C. § 2202. Upon

information and belief, ECS and Kobayashi are citizens of different States, and the sum or value of

the claim being asserted herein by ECS is greater than $75,000, calculated in accordance with 28

U.S.C. § 1332 (b), the action arises under the Constitution and laws of the United States, the action

arises under an Act of Congress relating to patents, and the action includes claims that are so related

to claims in the action within the original jurisdiction of this Court that they for a part of the same

case or controversy under Article III of the United States Constitution, thereby vesting this Court with supplemental jurisdiction regarding those claims.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § § 1391 and 1400.

3.    Defendant has sufficient contacts with New York, this District and Division to satisfy this Court's exercise of personal jurisdiction over it.

4.    Defendant has contractually agreed in a related case, Carotek, Inc. v. Kobayashi Ventures, LLC, Civil Action. No. 07 Civ. 11163 (NRB)(RLE) (hereinafter "Related Case"), presently pending in this Court, that this Court is a proper forum for actions arising of the interpretation and enforcement of a License Agreement between Champion Paper Company and Carotek, Inc. relating to the patents at issue in this action, and has contractually consented to personal jurisdiction in the State of New York pursuant to the Governing Law provision, Section XVIII, in the License Agreement at issue in the related case.

## PARTIES

5.    Plaintiff ECS is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Matthews, N.C. ECS was formed on May 7, 2007 and began business on January 1, 2008 for the purpose of engaging in the manufacture and sale of certain event capturing systems of the general type previously sold by Carotek, Inc. until it discontinued selling event capturing systems on December 27, 2007.

6.    Upon information and belief, Defendant Kobayashi is a privately held company not organized under the laws of the North Carolina. Upon further information and belief, Defendant Kobayashi purports to be the assignee of all right, title and interest of certain United States Letters Patent originally owned by Champion Paper Company, as identified below.

2

## SUMMARY OF FACTS

7.      United States Letters Patent No. 5,717,456 was issued on February 10, 1998 to Robert

J. Rudt, et al on an application filed on March 6, 1995 for "System for Monitoring a Continuous

Manufacturing Process."  Kobayashi claims to be the owner of all right, title and interest in and to

the aforesaid patent, hereinafter referred to as the "'456 Patent."

8.      United States Letters Patent No. 5,821,990 was issued on October 13, 1998 to Robert

J. Rudt, et al on an application filed on September 3, 1997 for "System for Monitoring a Continuous

Manufacturing Process."  Kobayashi claims to be the owner of all right, title and interest in and to

the aforesaid patent, hereinafter referred to as the "'990 Patent."

9.      United States Letters Patent No. 6,211,905 was issued on April 3, 2001 to Robert J.

Rudt, et al on an application filed on July 30, 1998 for "System for Monitoring a Continuous

Manufacturing Process."  Kobayashi claims to be the owner of all right, title and interest in and to

the aforesaid patent, hereinafter referred to as the "'905 Patent."  The '456, '990 and '905 Patents

are identified collectively in this Complaint as the "Champion Patents."

10.     On or about October 29, 2007, an attorney representing Kobayashi forwarded to

Carotek, Inc., by means of a letter to Carotek's attorney, a demand that Carotek furnish Kobayashi

a copy of the above-referenced License Agreement together with an accounting of "annual fees"

allegedly due from Carotek under the License Agreement.

3

11.     On or about November 26, 2007, an attorney representing Kobayashi forwarded to Carotek and its attorney a letter purporting to place Carotek on formal "notice of default" and threatening to terminate the Agreement on the thirty-first day after the date of the letter.

12.     The same November 26, 2007 letter references numerous patents and demands that Carotek "immediately cease the design, manufacture, sale and installation of the technology or any derivation thereof" covered by the listed patents.

13.     In the Related Case, Kobayashi has asserted that ECS is an alter ego of Carotek, and that the separate business forms of Carotek and ECS should be ignored, that Carotek itself should be held legally liable for acts of alleged patent infringement by ECS on and after January 1, 2008, and has taken discovery for the purpose of establishing the alter ego status of Carotek and ECS.

14.     Kobayashi has recently moved to dismiss without prejudice Counts I and II of its counterclaim against Plaintiff Carotek, Inc. in the Related Case, wherein Kobayashi accuses Carotek of patent infringement and inducing patent infringement.  The claimed reason for the motion to dismiss is that Kobayashi now acknowledges that Carotek is "out of the event capturing systems ("ECS") business, and for this reason that "it does not make sense for the infringement claims to now be pursued against Carotek."

15.     Kobayashi is therefore asserting and acknowledging that ECS is, in fact, a separate legal entity and is not the alter ego of Carotek.  As such, the allegations of infringement occurring after January 1, 2008 and contained in the Related Case clearly relate to activities being carried out by ECS, and not Carotek.

16.     Beginning in at least April, 2008 and, upon information and belief, continuing to the present, Kobayashi has directed numerous customer demand letters (hereinafter "Demand Letters")

4

to present and potential customers of ECS, including inter alia, claims that past sales extending as far back as 1998 by Carotek under a license agreement from Champion Paper Company are infringements of the above referenced Champion Patents, and demands that these ECS customers provide voluminous records documenting sales by Carotek to these customers over the past 10 years. These Demand Letters contained false and defamatory claims regarding potential liability for patent infringement claims of the addressees extending back to 1998, including the alleged obligation to cease using such equipment. Upon information and belief, these demands were made by Kobayashi for the purpose of causing Carotek customers who are now also ECS customers or potential customers not to do business with ECS, but to instead order event capturing systems from Monitoring Technology Corporation ("Monitoring Technology"), Kobayashi's alter ego.

17.    At the time the above-referenced Demand Letters were sent to the addressees named therein, ECS was in competition with Monitoring Technology, a direct competitor of ECS, for new orders for event capturing systems from the addresses. The Demand Letters were sent by Kobayashi for the purpose, and had the effect of, causing the delay, cancellation or modification of purchase orders the addressees had determined to give to ECS.

18.    Upon information and belief, Kobayashi and Monitoring Technology are alter egos of each other, are owned by the same individuals, and act for each other in numerous business activities. Upon information and belief, Monitoring Technology and Kobayashi are operated in such a manner as to deceive and mislead those with whom each does business.

19.    In concert with the sending of the above Demand Letters, one or more principals of Kobayashi and Monitoring Technology have asserted to the Demand Letters addressees that any purchase of equipment from ECS could result in the requirement that the addressee would be

5

required to pay to Monitoring Technology the full purchase price of the equipment purchased from ECS, amounting to millions of dollars.

20.      The United States District Court for the Eastern District of Virginia ruled on May 7, 2008 in <u>Kobayashi Ventures v. Papertech, Inc.</u>, 2:07cv 612, that Kobayashi did not acquire the rights to recover for any past infringement of the Champion Patents, and could not recover for any alleged acts of patent infringement prior to December 10, 2007. ("The 'Patent Assignment' contains no reference to past infringement whatsoever and makes no reference to the respective rights of Kobayashi and Jacklin Associates to sue for infringement that took place before the assignment was consummated.") Slip op. at 8. Thus, when Kobayashi made demand on Carotek in November, 2007 for payment of back royalties on account of the Champion Patents, it had no legal right to do so. Nothing presently on the public record indicates that Kobayashi has even by now acquired such rights.

21.      The acts alleged above, and other acts of a similar nature, result in an actual justiciable controversy between ECS and Kobayashi within the meaning of 28 U.S.C. § 2201(a).

### CLAIM FOR DECLARATORY JUDGMENT THAT ECS HAS NOT INFRINGED THE CHAMPION PATENTS

22.      Paragraphs 1-21 are incorporated by reference herein as though set forth in their entirety.

23.      There is an actual and justiciable controversy within the meaning of 28 U.S.C.2201(a) between ECS and Kobayashi as to, <u>inter alia</u>, whether ECS has infringed the Champion Patents.

6

24.     ECS denies the claims and the allegations by Kobayashi that it has infringed the Champion Patents, and seeks a declaratory judgment from this Court that ECS has not infringed the Champion Patents.

## CLAIM FOR DECLARATORY JUDGMENT
## OF PATENT INVALIDITY AND UNENFORCEABILITY

25.     Kobayashi has claimed and does now claim that ECS is infringing the Champion Patents by the offer of sale and sale of certain industrial systems including an express allegation of infringement made directly to ECS and its customers. ECS has denied and does now deny such charge of infringement and has asserted and does now assert that it has the right to offer for sale and sell the accused systems unhampered and unmolested by Kobayashi or any other entity claiming an interest in the Champion Patents.

26.     The Champion Patents, when given the scope asserted for it by Kobayashi are broader than the alleged invention described therein and consequently Kobayashi is not entitled to assert such scope for the Champion Patents as to cover systems offered for sale and sold by Carotek.

27.     The Champion Patents are void and unenforceable against Carotek for at least each of the following reasons, among others:

(a)     prior to the alleged invention claimed in the Champion Patents or more than one year prior to the effective filing date of the application therefor, the alleged invention and all material and substantial parts thereof had been described, published, patented and contained in patents and printed publications in the United States and foreign countries;

(b)     the applicant for the Champion Patents was not the original and first inventor of the alleged invention described and claimed in the patent or any material or substantial parts thereof, but

the same in each of its material and substantial parts was invented, known to or used by others in this country before the applicant's alleged invention thereof, was patented and described in a printed publication;

(c)     more than one year prior to the effective application date of the Champion Patents–March 6, 1995--the alleged invention and each and every material and substantial part thereof were in public use or on sale or offered for sale in the United States, and was patented and described in a printed publication;

(d)     the alleged invention described and claimed in the Champion Patents does not constitute a patentable discovery or invention within the meaning of the patent statutes in view of the prior state of the art and was common knowledge on the part of those skilled in the art at and prior to the date of the alleged invention or discovery of the Champion Patents;

(e)     the differences between the subject matter sought to be patented in the Champion Patents and the prior art are such that the subject matter as a whole of the Champion Patents would have been obvious at the time the alleged invention of the patent was made to persons of ordinary skill in the art to which the subject matter pertains;

(f)     the specification of the Champion Patents is not in such full, clear, concise and exact terms as to enable a person skilled in the arts or sciences to which the subject matter pertains or with which it is most nearly connected to make and use the same, and does not set forth the best mode contemplated by the inventor of carrying out the alleged invention;

(g)     the Champion Patents fail to particularly point out and distinctly claim the improvement or combination alleged to constitute the invention or disclosure thereof; and

8

(h)    Kobayashi or others acting in privity with it have misused the "Champion Patents" by making infringement allegations against ECS, knowing that the accused systems offered for sale and sold by ECS do not infringe a valid claim of the Champion Patents, and knowing that the asserted claims of the Champion Patents are not infringed by the accused systems offered for sale and sold by ECS. In addition, Kobayashi has contacted numerous of ECS's customers and has made false, injurious and libelous statements regarding this litigation, the legal status of the equipment purchased by ECS's customers from ECS, including, inter alia:

(i)    the implication that Kobayashi has acquired certain License Agreements defining certain rights by licensees to use the patented technology for a time period extending to as far back as December 8, 1998, even though Kobayashi did not acquire the right to financial recovery for any actions occurring before December 10, 2007, a fact not identified by Kobayashi;

(ii)    that Kobayashi "sued" Carotek without noting that it was Carotek that sued Kobayashi, not the other way around;

(iii)    that Carotek's and ECS's customers are using "unlicensed Products";

(iv)    that use of such Products (as defined in those statements) exposes the customer to "potential liability";

(v)    that the customer may find itself in the "unfortunate position of ultimately being held legally and financially responsible for Patent Infringement";

(vi)    that all of certain categories of products purchased by the customer from Carotek since 1998 are potentially subject to infringement liability;

(vii)    by, implication, Kobayashi has the legal right to "disrupt the operations" at the customers' facilities;

(viii)    failed to inform the customers that by Kobayashi's own claim and admission, Carotek was a licensee under its patents from 1998 until late December, 2007; and

(ix)    failed to inform the customers that Carotek has asserted claims and defenses to Kobayashi's claims that, if proven, would deprive Kobayashi of any right to recover from Carotek itself.

28.    Each of the above-identified statements were made with actual malice and with the intention to convey to ECS's customers the false impression that these ECS customers are subject to patent infringement claims by Kobayashi, the false impression that ECS has sold products to its customers without disclosing to them that a third party had valid infringement claims, and the false impression that the customers are obligated to comply with Kobayashi's demands for information or be subject to having their respective operations disrupted.    Each of the above-identified statements were also made to Carotek customers, knowing that the same customers were presently intending to purchase new event capturing systems from ECS, and for the purpose of causing ECS to lose orders because of such threats made by Monitoring Technology and Kobayashi.

## CLAIM FOR RELIEF-INTERFERENCE WITH PROSPECTIVE ADVANTAGE

29.    Paragraphs 1-28 are incorporated by reference herein as though set forth in their entirety.

30.    Upon information and belief, such false statements as those found in the Demand Letters have caused ECS to suffer current and future economic damages in amounts to be hereafter proven.

10

31.    ECS is entitled to have and recover of Kobayashi amounts necessary to make ECS whole in response to Kobayashi's tortious interference with its business activities and those of its customers.

## CLAIM FOR RELIEF-UNFAIR TRADE PRACTICES

32.    Paragraphs 1-31 are incorporated by reference herein as though set forth in their entirety.

33.    North Carolina General Statute "75-1.1 Unfair methods of competition in or affecting commerce" governs the claims arising from the Demand Letters.

34.    ECS is an entity organized in the state of North Carolina and has suffered economic harm caused by defendant Kobayashi's improper and illegal activities as set forth in this Complaint.

35.    Upon information and belief, certain of the customers to whom Kobayashi has communicated false and libelous statements do substantial business within the state of North Carolina.

36.    Upon information and belief, Kobayashi is owned by James Dechman and John Fiore, who also have an interest in Monitoring Technology, which is a direct competitor of ECS and regularly competes against ECS for business. ECS identifies James Dechman and John Fiore and Monitoring Technology as presently non-party participants in the illegal and tortious activities set forth in this Complaint.

37.    Monitoring Technology formed Kobayashi for the purpose of unfairly competing with ECS in trade or commerce, including trade or commence within North Carolina, and in

11

furtherance of such purpose has engaged in at least the following unfair and deceptive acts and practices:

(a)    Kobayashi has contacted numerous of ECS's customers and has made false, injurious and libelous statements regarding this litigation, the legal status of the equipment purchased by ECS's customers from ECS, including, inter alia:

(b)    that Kobayashi "sued" Carotek without noting that it was Carotek that sued Kobayashi, not the other way around;

(c)    that ECS's customers are using "unlicensed Products";

(d)    that use of such Products (as defined in those statements) exposes the customer to "potential liability":

(e)    that the customer may find itself in the "unfortunate position of ultimately being held legally and financially responsible for Patent Infringement";

(f)    that all of certain categories of products purchased by the customer from Carotek since 1998 are potentially subject to infringement liability;

(g)    by, implication, Kobayashi has the legal right to "disrupt the operations" at the customers' facilities;

(h)    failed to inform the customers that by Kobayashi's own claim and admission, Carotek was a licensee under its patents from 1998 until late December, 2007; and

(i)    failed to inform the customers that Carotek has asserted claims and defenses to Kobayashi's claims that, if proven, would deprive Kobayashi of any right to recover from ECS itself.

12

38.    Each of the above-identified statements were made with actual malice and with the intention to convey to ECS's customers the false impression that these ECS customers are subject to patent infringement claims by Kobayashi, the false impression that ECS has sold products to its customers without disclosing to them that a third party had valid infringement claims, and the false impression that the customers are obligated to comply with Kobayashi's demands for information or be subject to having their respective operations disrupted.

39.    Upon information and belief, at least one motivation for the formation of Kobayashi was for the purpose of obtaining competitive information by means of enforcement of a license agreement acquired for that purpose by Kobayashi through intermediaries, and by means of litigation by which Kobayashi could gain access to competitive information with which to threaten ECS's customers while insulating Monitoring Technology and its owners from liability for its wrongful acts.

40.    Kobayashi has followed through with its intentions by actually contacting numerous ECS customers, as alleged above, and making false, libelous and malicious statements, also as set out above.

41.    ECS has suffered current and future economic damages in amounts to be hereafter proven.

42.    ECS is entitled to have and recover of Kobayashi amounts necessary to make ECS whole in response to Kobayashi's unfair trade practices with its business activities and those of its customers.

13

## CLAIM FOR RELIEF– FRAUD

43.    Paragraphs 1-47 are incorporated by reference herein as though set forth in their entirety.

44.    The statements made by Kobayashi as set out above were undertaken by Kobayashi with malice, with knowledge of their falsity, with the intention that they be relied upon and believed true by the recipients, and for the purpose of damaging ECS in its business.

45.    The actions set out above, and the false and libelous statements made by Kobayashi have caused ECS to suffer current and future economic damages in amounts to be hereafter proven.

46.    ECS is entitled to have and recover of Kobayashi amounts necessary to make ECS whole in response to Kobayashi's fraudulent activities.

## CLAIM FOR ATTORNEY'S FEES– BAD FAITH LITIGATION

47.    Paragraphs 1-46 are incorporated by reference herein as though set forth in their entirety.

48.    Kobayashi failed to undertake reasonable steps to determine if ECS was infringing the Champion Patents before it and its alter ego, Monitoring Technology,  made claims to ECS's customers that ECS is infringing the Champion Patents, and before contacting numerous of ECS's customers threatening them with possible patent infringement if they did not meet its demands contained in the Demand Letters.

49.    Defendant Kobayashi acted and continues to act in bad faith by falsely representing to ECS's customers that ECS is committing acts of patent infringement without

14

undertaking due diligence to determine whether ECS has actually infringed any claims of the Champion Patents.

50.    This Court may award attorney fees pursuant to 35 U.S.C. 285 in exceptional circumstances.

51.    ECS is entitled to have and recover of Kobayashi amounts necessary to make ECS whole in response to Kobayashi's bad faith litigation and to deter similarly situated litigants from asserting similar claims in bad faith.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ECS prays:

A.    That Kobayashi, its agents, servants, employees, and attorneys and all those in active concert or participation with it, be enjoined, pending trial, from instituting, prosecuting or threatening any action against Plaintiff in this court or elsewhere;

B.    That ECS have and recover from Kobayashi such amounts as are required to compensate it for the damage done by Koyayashi and Monitoring Technology.

C.    That Defendant, its agents, servants, employees, attorneys and all those in active concert or participation with it be enjoined from alleging that ECS has breached the Agreement, or is infringing any patent referenced in the Agreement;

15

D.      That the Champion Patents and all the asserted claims thereof be adjudicated and decreed to be invalid, unenforceable, and not infringed;

E.      That it be adjudged and decreed that Kobayashi and all persons acting on its behalf be adjudicated to have misused the Champion Patents by accusing ECS of infringement of claims known not to be infringed, and known to be invalid and unenforceable;

F.      That Kobayashi and all persons acting on its behalf be permanently enjoined and restrained from all further such acts of patent misuse;

G.      That Kobayashi and all persons acting on its behalf be permanently enjoined and restrained from charging, orally or in writing, that the Champion Patents are infringed by ECS, directly or indirectly;

H.      That this Court award Plaintiffs damages sufficient to make Plaintiff whole for interference with prospective advantage, and unfair and deceptive trade practices;

I.      That this Court award Plaintiffs interest, costs, attorneys' fees, expenses and such further relief that this Court deems just and equitable; and

J.      That all issues so triable be tried by jury.

This the 24th day of June, 2008.

Respectfully submitted,

_signature_

 Raymond R. Castello (RC 2106)
FISH & RICHARDSON P.C.
Citigroup Center - 52nd Floor
153 East 53rd St.
New York, NY 10022-4661
Tel: 212-765-5070

16

Attorney for Plaintiff
Event Capturing Systems, Inc.


**OF COUNSEL:**

W. Thad Adams, III, Esq.
(N.C. Bar Number 00,020)
**ADAMS INTELLECTUAL PROPERTY P.A.**
201 South College Street
Suite 2350 Charlotte Plaza
Charlotte, NC   28244
Tel:  (704) 375-9249
Fax: (704) 375-0729
e-mail: wta@adamspat.com

17