## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

EVENT CAPTURING SYSTEMS, INC., :
             :
    Plaintiff/Counter-defendant :
             :
   v.           :   Civil Case No. 1:08-cv-05706-NRB
             :
KOBAYASHI VENTURES, LLC,   :
             :
   Defendant/Counter-plaintiff. :

## KOBAYASHI VENTURES, LLC'S ANSWER TO
## "PLAINTIFF'S DECLARATORY JUDGMENT COMPLAINT
## AND COMPLAINT FOR AFFIRMATIVE MONETARY RELIEF"
## AND COUNTERCLAIM

   Kobayashi Ventures, LLC ("Kobayashi Ventures"), by and through its attorneys, Jeffrey M. Schwaber and Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C., hereby answers the "Declaratory Judgment Complaint and Complaint for Affirmative Monetary Relief ("Complaint")" filed by Event Capturing System, Inc. ("ECS") stating as follows:

   To the specifically enumerated paragraphs of the Complaint, by like paragraphs, Kobayashi Ventures avers as follows:

   1.  Kobayashi Ventures denies each and every allegation contained in paragraph 1 of the Complaint in that Plaintiff asserts a legal conclusion, and leaves Plaintiff to its burden with respect thereto.

   2.  Kobayashi Ventures denies each and every allegation contained in paragraph 2 of the Complaint in that Plaintiff asserts a legal conclusion, and leaves Plaintiff to its burden with respect thereto.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

3.      Kobayashi Ventures denies each and every allegation contained in paragraph 3 of the Complaint in that Plaintiff asserts a legal conclusion, and leaves Plaintiff to its burden with respect thereto.

4.      Kobayashi Ventures leaves the document referred to in paragraph 4, License Agreement with a non-party to this case, to speak for itself.  Kobayashi Ventures admits that the case of Carotek, Inc. v. Kobayashi Ventures, LLC, is pending in this Court.  Kobayashi denies each and every remaining allegation contained in paragraph 4 of the Complaint.

5.      Kobayashi Ventures is without sufficient knowledge or information to either admit or deny the allegations contained in the first sentence of paragraph 5 of the Complaint. Kobayashi Ventures denies each and every remaining allegation contained in paragraph 5 of the Complaint.

6.      Kobayashi Ventures denies each and every allegation contained in paragraph 6 of the Complaint, except admits that it is a privately held limited liability company which is organized and existing under the laws of the State of Delaware.  Kobayashi Ventures admits that it is the assignee of, *inter alia*, all right, title, and interest of certain United States Letters Patent.

7.      Kobayashi Ventures leaves the documents referred to in paragraph 7 to speak for themselves.  Kobayashi Ventures admits to being the owner of, among other things, all right, title and interest in and to U.S. Patent No. 5,717,456.

8.      Kobayashi Ventures leaves the documents referred to in paragraph 8 to speak for themselves.  Kobayashi Ventures admits to being the owner of, among other things, all right, title and interest in and to U.S. Patent No. 5,821,990.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

9.    Kobayashi Ventures leaves the documents referred to in paragraph 9 to speak for themselves.  Kobayashi Ventures admits to being the owner of, among other things, all right, title and interest in and to U.S. Patent No. 6,211,905.

10.    Kobayashi Ventures denies each and every allegation contained in paragraph 10 of the Complaint and leaves the document referred to in paragraph 10 to speak for itself. Kobayashi Ventures admits only that its counsel sent to Carotek, Inc. ("Carotek") a letter dated October 29, 2007.

11.    Kobayashi Ventures denies each and every allegation contained in paragraph 11 of the Complaint and leaves the document referred to in paragraph 11 to speak for itself. Kobayashi Ventures admits only that its counsel sent to Carotek a letter dated November 26, 2007.

12.    Kobayashi Ventures denies each and every allegation contained in paragraph 12 of the Complaint and leaves the document referred to in paragraph 12 to speak for itself.

13.    Kobayashi Ventures leaves the documents referred to in paragraph 13, specifically alleged assertions in filings by Kobayashi Ventures in the case of Carotek, Inc. v. Kobayashi Ventures, LLC, to speak for themselves.  Kobayashi Ventures denies each and every remaining allegation contained in paragraph 13 of the Complaint.

14.    Kobayashi Ventures leaves the documents referred to in paragraph 14, specifically alleged assertions in filings in the case of Carotek, Inc. v. Kobayashi Ventures, LLC, to speak for themselves.  Kobayashi Ventures denies each and every remaining allegation contained in paragraph 14 of the Complaint.

15.    Kobayashi Ventures leaves the documents referred to in paragraph 15, specifically alleged assertions in filings by Kobayashi Ventures in the case of Carotek, Inc. v.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

Kobayashi Ventures, LLC, to speak for themselves. Kobayashi Ventures denies each and every remaining allegation contained in paragraph 15 of the Complaint.

16.     Kobayashi Ventures admits that its counsel sent letters to selected North American paper industry companies. Kobayashi Ventures leaves such letters referred to in paragraph 16 to speak for themselves. Kobayashi Ventures denies each and every remaining allegation contained in paragraph 16 of the Complaint.

17.     Kobayashi Ventures denies each and every allegation contained in paragraph 17 of the Complaint.

18.     Kobayashi Ventures denies each and every allegation contained in paragraph 18 of the Complaint.

19.     Kobayashi Ventures leaves the letters alluded to in paragraph 19 to speak for themselves. Kobayashi Ventures denies each and every remaining allegation contained in paragraph 19 of the Complaint.

20.     Kobayashi Ventures leaves the document referred to in paragraph 20, specifically a written ruling in a separate action, to speak for itself. Kobayashi Ventures denies each and every remaining allegation contained in paragraph 20 of the Complaint.

21.     Kobayashi Ventures denies each and every allegation contained in paragraph 21 of the Complaint, except admits that there is an actual and justiciable controversy between the parties set forth in the Counterclaim below.

AS AND FOR KOBAYASHI VENTURES' RESPONSE
TO ECS' CLAIM FOR DECLARATION THAT
ECS HAS NOT INFRINGED THE CHAMPION PATENTS

22.     Kobayashi Ventures adopts and incorporates by reference its answers to paragraphs 1 through 21 above as if fully set forth herein.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

23.      Kobayashi Ventures denies each and every allegation contained in paragraph 23 of the Complaint, except admits that there is an actual and justiciable controversy between the parties set forth in the Counterclaim below.

24.      Kobayashi Ventures is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 24 of the Complaint.

AS AND FOR KOBAYASHI VENTURES' RESPONSE<br>
TO ECS' CLAIM FOR DECLARATION OF<br>
PATENT INVALIDITY AND UNENFORCEABILITY

25.      Kobayashi Ventures leaves its pleadings wherein it has asserted its claims, and ECS' pleadings wherein it has asserted its claims/denials, referred to in paragraph 25 to speak for themselves.

26.      Kobayashi Ventures denies each and every allegation contained in paragraph 26 of the Complaint.

27.      Kobayashi Ventures denies each and every allegation contained in paragraph 27, including subparagraphs (a) through (h), of the Complaint.

28.      Kobayashi Ventures denies each and every allegation contained in paragraph 28 of the Complaint.

AS AND FOR KOBAYASHI VENTURES' RESPONSE<br>
TO ECS' CLAIM FOR RELIEF-INTERFERENCE WITH PROSPECTIVE ADVANTAGE

29.      Kobayashi Ventures adopts and incorporates by reference its answers to paragraphs 1 through 28 above as if fully set forth herein.

30.      Kobayashi Ventures denies each and every allegation contained in paragraph 30 of the Complaint.

31.      Kobayashi Ventures denies each and every allegation contained in paragraph 31 of the Complaint.

STEIN, SPERLING, BENNETT,<br>
DE JONG, DRISCOLL &<br>
GREENFEIG, P.C.

ATTORNEYS AT LAW<br>
25 WEST MIDDLE LANE<br>
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

## AS AND FOR KOBAYASHI VENTURES' RESPONSE
## TO ECS' CLAIM FOR RELIEF-UNFAIR TRADE PRACTICES

32.    Kobayashi Ventures adopts and incorporates by reference its answers to paragraphs 1 through 31 above as if fully set forth herein.

33.    Kobayashi Ventures denies each and every allegation contained in paragraph 33 of the Complaint in that Plaintiff asserts a legal conclusion, and leaves Plaintiff to its burden with respect thereto.

34.    Kobayashi Ventures is without sufficient knowledge or information to either admit or deny the allegation that Plaintiff, "is an entity organized in the state of North Carolina[.]" Kobayashi Ventures denies each and every remaining allegation contained in paragraph 34 of the Complaint.

35.    Kobayashi Ventures is without sufficient knowledge or information to either admit or deny the allegation that certain customers have done substantial business within the state of North Carolina.  Kobayashi Ventures denies each and every remaining allegation contained in paragraph 35 of the Complaint.

36.    Kobayashi Ventures admits that Jim Dechman and John Fiore are members of Kobayashi Ventures and that they have an ownership interest in Monitoring Technology Corporation ("MTC").  Kobayashi Ventures denies each and every remaining allegation contained in paragraph 36 of the Complaint.

37.    Kobayashi Ventures denies each and every allegation contained in paragraph 37, including subparagraphs (a) through (i), of the Complaint.

38.    Kobayashi Ventures denies each and every allegation contained in paragraph 38 of the Complaint.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

39.     Kobayashi Ventures denies each and every allegation contained in paragraph 39 of the Complaint.

40.     Kobayashi Ventures denies each and every allegation contained in paragraph 40 of the Complaint.

41.     Kobayashi Ventures denies each and every allegation contained in paragraph 41 of the Complaint.

42.     Kobayashi Ventures denies each and every allegation contained in paragraph 42 of the Complaint.

AS AND FOR KOBAYASHI VENTURES' RESPONSE<br>TO ECS' CLAIM FOR RELIEF—FRAUD

43.     Kobayashi Ventures adopts and incorporates by reference its answers to paragraphs 1 through 42 above as if fully set forth herein.

44.     Kobayashi Ventures denies each and every allegation contained in paragraph 44 of the Complaint.

45.     Kobayashi Ventures denies each and every allegation contained in paragraph 45 of the Complaint.

46.     Kobayashi Ventures denies each and every allegation contained in paragraph 46 of the Complaint.

AS AND FOR KOBAYASHI VENTURES' RESPONSE<br>TO ECS' CLAIM FOR ATTORNEY'S FEES—BAD FAITH LITIGATION

47.     Kobayashi Ventures adopts and incorporates by reference its answers to paragraphs 1 through 46 above as if fully set forth herein.

48.     Kobayashi Ventures denies each and every allegation contained in paragraph 48 of the Complaint.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

49.     Kobayashi Ventures denies each and every allegation contained in paragraph 49 of the Complaint.

50.     Kobayashi Ventures denies each and every allegation contained in paragraph 50 of the Complaint in that Plaintiff asserts a legal conclusion, and leaves Plaintiff to its burden with respect thereto.

51.     Kobayashi Ventures denies each and every allegation contained in paragraph 51 of the Complaint.

AS AND FOR KOBAYASHI VENTURES' RESPONSE
TO ECS' PRAYER FOR RELIEF

Kobayashi Ventures denies each and every allegation contained in the Prayer for Relief section, including subparagraphs (A) through (J), of the Complaint in that Plaintiff is not entitled to the relief sought therein.

AS AND FOR A FIRST DEFENSE

52.     The Complaint fails to state a claim upon which relief can be granted.

AS AND FOR A SECOND DEFENSE

53.     Upon information and belief, Plaintiff is a fraudulently created entity, created with a sham transaction, and in connection with an effort by Carotek to avoid liability for, among other things, patent infringement.

AS AND FOR A THIRD DEFENSE

54.     Kobayashi Ventures further intends to rely upon all defenses, legal and/or equitable, which may be available to it based upon the facts as may become known before and during the trial of this matter.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

8

<u>AS AND FOR A FOURTH DEFENSE</u>

55.      Any and all other claims or allegations contained in the Complaint, not otherwise expressly admitted or denied herein, are hereby denied.

<u>AS AND FOR A FIFTH DEFENSE</u>

56.      The Complaint is barred, in whole or in part, by fraud and illegality.

### **COUNTERCLAIM**

Counter-plaintiff Kobayashi Ventures, LLC ("Kobayashi Ventures"), by and through its attorneys, Jeffrey M. Schwaber and Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C., hereby sues and demands injunctive relief and legal damages in its favor and against Counter-defendant Event Capturing Systems, Inc. ("ECS"), on grounds as follows:

<u>INTRODUCTION</u>

57.      This is an action brought by Kobayashi Ventures for patent infringement by ECS since its creation in or about May of 2007, arising under the patent laws of the United States, Title 35, United States Code.  Kobayashi Ventures, exclusively owns, among other things, three U.S. patents and a variety of foreign patents that relate to the invention(s) utilizing video to continuously monitor manufacturing processes.

58.      Upon information and belief, ECS is a fraudulently created entity, created with a sham transaction, and in connection with an effort by Carotek to avoid liability for, among other things, patent infringement.

59.      On May 12, 2008, Carotek's CEO and co-owner testified that Carotek's ECS business was sold for $1, without any documentation, to a newly formed entity, ECS, Inc., an entity (i) owned by James Addison Bell, among others; (ii) located in the same office as Carotek;

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

9

(iii) using the same shop as Carotek; (iv) using the same phone line as Carotek; and (v) serving the same customers Carotek served.

60.     The principals involved in ECS and Carotek have shown themselves to be serial infringers whose actions are designed in whole or substantial part to seek to defraud and otherwise avoid obligations to Kobayashi Ventures.

61.     Since its creation, ECS willfully and materially has infringed upon such patents belonging to Kobayashi Ventures ("Kobayashi's Patented Technology," detailed in ¶ 69 below).

62.      Kobayashi's Patented Technology has been pivotal in the web monitoring industry and its direct customers, the paper, plastics and printing industries—facilitating digital monitoring and capturing of events during the manufacturing process to increase production efficiencies.  Kobayashi's Patented Technology has accomplished that which previously had not been possible, enabling the production of higher quality product at great savings to manufacturers and ultimately to consumers.  With conscious disregard for, among other things, the patent laws of the United States of America and Kobayashi's Patented Technology, ECS has been violating, among other things, U.S. patent laws and the legal rights of Kobayashi Ventures, among others.  In this Counterclaim, Kobayashi Ventures seeks necessary injunctive relief and legal damages in its favor and against ECS.

PARTIES

63.     Kobayashi Ventures is a limited liability company organized and existing under the laws of the State of Delaware.  The business of Kobayashi Ventures is to manage, market, consult, develop, manufacture, create, own, distribute, purchase, sell and/or license patents and other intellectual property.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

64.    ECS is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Matthews, North Carolina.  Upon information and belief, ECS provides event capturing camera products, equipment, systems and software (collectively, "Event Capturing Systems" or "ECS Systems" or "ECS" or "ECS II" or "ECS v.10" or "Mobile ECS" or "Shippable ECS" or "Portable Laptop ECS") used in the paper, printing and other web monitoring industries.  These systems in fact incorporate and rely on Kobayashi's Patented Technology.

65.    In pleading, Carotek unequivocally admitted the following in answer to Kobayashi Ventures' Counterclaim at ¶ 32:

> Carotek provides event capturing camera products, equipment, systems and software (collectively, "Event Capturing Systems" or "ECS Systems" or " ECS" or "ECS II" or "ECS v.10" or "Mobile ECS" or "Shippable ECS" or "Portable Laptop ECS") used in the paper, printing and other web monitoring industries. These systems in fact incorporate and rely on Kobayashi's Patented Technology.

According to Mr. Bell's sworn deposition testimony, the ECS Systems referenced in the foregoing admitted paragraph became the ECS Systems sold by ECS the Counter-defendant herein.

## JURISDICTION AND VENUE

66.    Subject matter jurisdiction is based on 28 U.S.C. §§ 1331, 1338, and 1367, and 35 U.S.C. § 281.

67.    This Court has personal jurisdiction over ECS as Plaintiff/Counter-defendant in this action.

68.    Venue is proper under 28 U.S.C. § 1391 and 28 U.S.C. 1400(b).

## FACTUAL ALLEGATIONS

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

69.    On or about December 10, 2007, by written assignment executed and delivered by Jacklin Associates, Inc. to Kobayashi Ventures, Kobayashi Ventures became, and now is, the owner, *inter alia*, of all right, title, and interest in and to such letters patent (previously and hereinafter referenced as "Kobayashi's Patented Technology"), having the exclusive right to make, use, sell, offer for sale, and import into the U.S. the following inventions:

> U.S. Patent No. 5,717,456
> U.S. Patent No. 5,821,990
> U.S. Patent No. 6,211,905
> Australian Patent Application No. 38274/95
> Brazilian Patent Application No. PI 9510548-4
> Chilean Patent Application No. 1898-95
> Finnish Patent Application No. 973611
> Indonesian Patent Application No. P952441
> Japanese Patent Application No. 8-526826
> South Korean Patent Application No. 1997-706231
> Malaysian Patent Application No. PI9703058
> Mexican Patent Application No. 976703
> New Zealand Patent Application No. 295027
> Norwegian Patent Application No. 974012
> South African Patent Application No. 95/9613
> Canadian Patent Application No. 2,214,724

Attached hereto as Exhibit 1 and incorporated herein by reference is the Patent Assignment along with a copy of the Amended Patent Assignment which was executed on August 25, 2008.  Such original Patent Assignment was recorded in the Patent and Trademark Office on December 11, 2007 at Reel/Frame 020218/0844.

70.    On or about October 19, 2007, by written assignment executed and delivered by International Paper Company ("International Paper") to Jacklin Associates, Inc., Jacklin Associates became the owner, *inter alia*, of all right, title, and interest in and to such letters patent (identified in ¶ 69 above), then having the exclusive right to make, use, and sell Kobayashi's Patented Technology.  Attached hereto as Exhibit 2 and incorporated herein by

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

reference is the Patent Purchase Agreement, Exhibit D of which is the Assignment of Patent

Rights.  Such Assignment of Patent Rights was recorded in the Patent and Trademark Office on

December 11, 2007 at Reel/Frame 020218/0823.

71.    International Paper became the owner of all right, title, and interest in and to such

letters patent (identified in ¶ 69 above) by virtue of assignment from each of the inventors to its

predecessor company Champion International Corporation ("Champion"), which became

International Paper through a merger.  The inventors' assignment was executed March 2, 1995

and recorded in the Patent and Trademark Office on March 6, 1995 at Reel/Frame 007382/0557,

and the merger document was executed December 31, 2000 and recorded in the Patent and

Trademark Office on November 26, 2007 at Reel/Frame 020143/0440.

72.    Since ECS' creation, without permission, ECS has made, caused to be made,

used, sold, and offer for sale products embodying Kobayashi's Patented Technology.

73.    ECS willfully has been infringing upon Kobayashi's Patented Technology, with

full knowledge of the ownership by others identified above, of Kobayashi's Patented

Technology, by engaging in conduct such as the following:

(a)    making, causing to be made, using, selling, and offering for sale,

without marking, license, permission and/or payment, products such as the

following:  synchronizing event capturing systems, cameras and enclosures, and

lights and enclosures, including mobile ECS and shippable ECS, portable laptop

ECS, and ECS v. 10.  These products among others, marketed and sold by ECS,

embody Kobayashi's Patented Technology in a manner such that the technology

utilized by ECS is substantially identical or sufficiently similar to Kobayashi's

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

Patented Technology, and/or such products otherwise are within and therefore embody Kobayashi's Patented Technology; and

(b)     actively inducing and causing others, such as manufacturers and owner operators of such products:  (i) to make, cause to be made, use, sell, and offer for sale products that embody Kobayashi's Patented Technology, without marking, license, permission, and/or payment, and/or (ii) to modify such products so that they embody Kobayashi's Patented Technology.

74.     ECS will continue its acts of infringement unless enjoined by this Court.

75.     Upon information and belief, ECS has been installing ECS Systems embodying Kobayashi's Patented Technology.  Unknowingly, the end customers who have purchased the systems have become unwitting accomplices to ECS' willful infringement as ECS has induced these parties into believing that Kobayashi's Patented Technology incorporated into the ECS marketed and sold by ECS have been appropriately licensed, paid for and marked.

76.     Absent entry of an injunction, the rights of the web monitoring industry and its direct customers, the paper, plastics and printing industries, likely will be irreparably harmed. Specifically, failure to provide to Kobayashi Ventures the equitable relief requested herein would allow ECS to force its unfair advantage upon the marketplace as ECS' competitors are under a royalty fee obligation.  If ECS' infringement effectively were to be condoned by not granting to Kobayashi Ventures the equitable relief sought herein, then ECS will continue to gain market share at the expense of its royalty paying competitors and use its infringement to further its unfair competitive advantage.  Such unfair competitive advantage would be harmful to the web monitoring industry as a whole, to the paper, packaging, plastics, and printing industries, and to

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

Kobayashi Ventures and the licensees of Kobayashi's Patented Technology, and ultimately to the downstream consumers.

77.     Remedies available at law are inadequate to compensate for an injury such as that described in herein.

78.     The balance of hardships between Kobayashi Ventures and ECS warrants granting to Kobayashi Ventures an equitable remedy.  Denying the legitimate royalty paying operators in the web monitoring industry and Kobayashi Ventures the equitable relief sought herein will cause Kobayashi Ventures to suffer additional immediate and real irreparable harm. This is due to the fact that for example there are multiple pending web monitoring projects up for competitive bid at this time.  A failure to grant the equitable relief sought herein would amount to a tacit consent allowing ECS to win business at the expense of the other legitimate royalty-paying bidders in the industry.  ECS should not be purporting to legitimately bid on these contracts since it lacks a license to Kobayashi's Patented Technology.  Granting to ECS not only the ongoing ability to bid but also the ongoing ability to benefit from a significant pricing advantage as a direct result of its ill-gotten price disparity would be doubly damaging to the market.  The resulting damage to the web monitoring industry and its customers would be impossible to reverse after the fact, given that the legitimate winning bid amount and bidder would be indeterminate and the well poisoned.  In contrast, granting the limited equitable relief sought simply would place ECS in the rightful position it chose to be in.  Absent the relief sought, ECS would continue to profit from its infringement at the expense of the legitimate licensees and customers in the web monitoring industry.

79.     For reasons described hereinabove, the public interest would be well served by granting to Kobayashi Ventures the equitable relief sought herein.  The very purpose of the

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

United States Patent and Trademark Office as well as the statutory scheme governing intellectual

property rights throughout the United States of America will be threatened if companies are

permitted to misappropriate protected, patented and/or otherwise proprietary technology for

themselves without cost or ramification.  A denial of the equitable relief sought herein materially

would also disserve the public interest in the manner described in ¶¶ 75 and 77 above.

Additionally, should an infringer such as ECS gain sufficient market share that it drives

legitimate, properly acting competitors out of business, this would have an anticompetitive effect

by reducing the number of options available to consumers.

### AS AND FOR A FIRST COUNTERCLAIM
Patent Infringement

80.     Kobayashi Ventures incorporates herein by reference the allegations set forth in

¶¶ 57 through 79 above.

81.     Since ECS' creation, ECS has committed acts of infringement pursuant to 35

U.S.C. § 271, including, without authority, making, using, offering to sell, and/or selling

Kobayashi's Patented Technology.

82.     Pursuant to 35 U.S.C. § 271 Kobayashi Ventures reserves all rights to amend its

Counterclaim to encompass additional acts of Patent Infringement.

83.     ECS' patent infringement proximately has caused and continues to cause

Kobayashi Ventures to sustain damages, and Kobayashi Ventures is threatened with the injury

described and inferred from the allegations herein.

### AS AND FOR A SECOND COUNTERCLAIM
Patent Infringement (Inducement)

84.     Kobayashi Ventures incorporates herein by reference the allegations set forth in

¶¶ 57 through 83 above.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

85.    ECS has committed acts of infringement pursuant to 35 U.S.C. § 271, including without authority, actively inducing and causing others, such as manufacturers and owner operators of such products, (i) to make, cause to be made, use, sell, and offer for sale products which embody Kobayashi's Patented Technology, and/or (ii) to modify such products so that they embody Kobayashi's Patented Technology.

86.    Pursuant to 35 U.S.C. § 271 Kobayashi Ventures reserves all rights to amend its Counterclaim to encompass additional acts of Patent Infringement (Inducement).

87.    ECS' patent infringement proximately has caused and continues to cause Kobayashi Ventures to sustain damages, and Kobayashi Ventures is threatened with the injury described and inferred from the allegations herein.

* * *

WHEREFORE, as to Counts I and II above, Counter-plaintiff, Kobayashi Ventures, LLC respectfully requests that this Honorable Court grant to it the following relief:

a.    an interim order mandating ECS to escrow a reasonably royalty based upon the gross margin of all products and systems it has at any time sold which use Kobayashi's Patented Technology, as the products would lack value absent Kobayashi's Patented Technology, including pre-judgment interest calculated from the respective sales dates to the present at the applicable prime interest rate(s);

b.    an order requiring ECS to account for and pay to Kobayashi Ventures damages for patent infringement, including interest on damages;

c.    treble damages as applicable pursuant to 35 U.S.C. § 284;

d.    an order granting to Kobayashi Ventures costs and reasonable attorneys' fees to be assessed against ECS, particularly in view of ongoing, willful infringement; and

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

such other and further relief which the Court deems just and proper.

DEMAND FOR JURY TRIAL

Kobayashi Ventures, LLC elects a trial by jury of all issues and claims in this action.


By:     _____/s/_____

Jeffrey M. Schwaber (NY Bar #4529699)


Dated:  September 2, 2008



By:     _____/s/_____

Jeffrey M. Schwaber (NY Bar #4529699)
Attorneys for Kobayashi Ventures, LLC
Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C.
25 West Middle Lane
Rockville, Maryland  20850
Telephone:  (301) 838-3210 (Jeffrey Schwaber)
Facsimile:  (301) 354-8110 (Jeffrey Schwaber)
Email: jschwaber@steinsperling.com

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

18

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of September, 2008, I will electronically file the foregoing with the Clerk of the Court using the ECF system, which will then send a notification of such filing (NEF) to the following:

> Raymond R. Castello
> Fish & Richardson P.C.
> 153 East 53rd Street, 52nd Floor
> New York, NY 10022
>
> Gregory A. Madera
> Fish & Richardson P.C
> 225 Franklin Street
> Boston, MA 02110

And I hereby certify that I will mail the document by U.S. mail to the following non-filing user(s):

> W. Thad Adams, III
> Adams Intellectual Property Law, P.A.
> 201 South College Street
> Suite 2350 Charlotte Plaza
> Charlotte, NC   28244

By:    _____/s/_____
       Jeffrey M. Schwaber (NY Bar #4529699)
       Attorneys for Kobayashi Ventures, LLC
       Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C.
       25 West Middle Lane
       Rockville, Maryland  20850
       Telephone:  (301) 838-3210 (Jeffrey Schwaber)
       Facsimile:  (301) 354-8110 (Jeffrey Schwaber)
       Email: jschwaber@steinsperling.com

L:\CLIENTS\K\KobayashiVentures.LLC\Event Capturing Systems.010\pleadings\146.answer.complaint.counterclaim.FINAL.doc

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

# EXHIBIT "1"

## PATENT ASSIGNMENT

WHEREAS, Jacklin Associates, Inc., with a principal business office of 259 North Radnor Chester Road, Suite 210, Wayne, Pennsylvania 19087 are the owners of those Patents set forth on the attached Exhibit A, which include a United States Patent No. for each Patent and the date of issuance (the "Patents").

WHEREAS, Kobayashi Ventures LLC referred to as "Assignee" and whose principal business office address is Kobayashi Ventures, LLC, 12587 Fair Lakes Circle, Suite 308, Fairfax, Virginia 22033,

is desirous of acquiring the entire right, title and interest in and to said Patents.

NOW, THEREFORE, in consideration of the sum of Ten Dollars ($10.00) in hand paid and other valuable consideration, the receipt whereof is hereby acknowledged, Jacklin Associates, Inc. have sold, assigned and transferred, and by these presents do sell, assign and transfer unto Assignee the full and exclusive right, title and interest in and to the Patents.

Jacklin Associates, Inc. hereby authorizes and requests the United States Patent and Trademark Office officials to send all future correspondence pertaining to the Patents to said Assignee.

IN TESTIMONY WHEREOF, I have hereunto set my hand as of this _10 th_ day of _December_, 2007.

Jacklin Associates, Inc.

By: _John N Irwin_

On this _10_ day of _Dec_, 2007, personally appeared before me the above named President of Jacklin Associates, Inc. to me known and known to me to be the person described in, and who executed, the foregoing instrument and acknowledged the same to be his free act and deed in and for the purposes set forth in said instrument.

(SEAL)

_Nancy Vanning_
NOTARY PUBLIC

My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Nancy N Vanning, Notary Public
Radnor Twp, Delaware County
My commission expires Aug 23, 2011

Exhibit A

5,821,990  System for monitoring a continuous manufacturing process
5,899,959  Measurement of visual characteristics of paper
6,613,195  Method for conditioning paper and paperboard webs
6,207,020  Method for conditioning paper and paperboard webs
5,717,456  System for monitoring a continuous manufacturing process
6,211,905  System for monitoring a continuous manufacturing process

The above Patents, together with all divisions, continuations, reexaminations, foreign counterparts and continuations-in-part of said patents, and any patents reissuing on any of the aforesaid patents, as well as all license agreements and other entitlements to receive royalties to which Seller is a party with respect to the patents ("Patent Materials").

## AMENDED PATENT ASSIGNMENT

WHEREAS, Jacklin Associates, Inc., with a principal business office of 259 North Radnor Chester Road, Suite 210, Wayne, Pennsylvania 19087 was the owner of those Patents set forth on the attached Exhibit A prior to 12/10/07, which include a United States Patent No. for each Patent and the date of issuance (the "Patents").

WHEREAS, Kobayashi Ventures, LLC referred to as "Assignee" and whose principal business office address is Kobayashi Ventures, LLC, 12587 Fair Lakes Circle, Suite 308, Fairfax, Virginia 22033, was desirous of acquiring the entire right, title and interest in and to said Patents, together with, among other things, all causes of action (whether known or unknown, asserted or unasserted, or whether currently pending, filed, or otherwise) and other enforcement rights under, or on account of, any of the assigned Patents, including the right to sue for past infringement.

WHEREAS, this document shall among other things, serve to confirm and reaffirm that effective 12/10/07, and consistent with the expressed purpose and intentions of the parties, all patent rights in their entirety passed directly from International Paper Company to Jacklin Associates, Inc., and with the Patent Assignment dated 12/10/07, directly to Kobayashi Ventures LLC. Neither Jacklin Associates, Inc. nor International Paper Company retained any rights whatsoever to any of the patents listed in Exhibit A as all rights transferred to Kobayashi Ventures LLC.

WHEREAS, Assignee adopts herein by reference the "Affidavit of Kobayashi Ventures LLC in Support of Assignment of Patent Rights" and the "Affidavit of Jacklin Associates, Inc. in Support of Assignment of Patent Rights" filed in the United States District Court, Eastern District of Virginia, Norfolk Division, Case No. 2:07-cv-00612-RGD-TEM, both of which verify, among other things, that with the Patent Assignment dated 12/10/07, Jacklin Associates, Inc. assigned to Assignee all rights under the "Patent Purchase Agreement" with International Paper Company (effective date of 10/19/07), including but not limited to, the right to sue for past infringement, acquired from International Paper Company. Jacklin Associates, Inc. did not retain any rights from the "Patent Purchase Agreement." All rights were transferred to Assignee. This document shall expressly reaffirm the following:

NOW, THEREFORE, in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Jacklin Associates, Inc. a Pennsylvania corporation ("Assignor"), hereby assigns, transfers, and conveys unto Kobayashi Ventures LLC ("Assignee"), or its designees, all right, title, and interest that exist today, may exist in the future in and to any and all of the following (collectively, the "Patent Rights"):

(a)    the provisional patent applications, patent applications and patents listed in the table below (the "Patents");

(b)    all reissues, reexaminations, extensions, continuations, continuations in part, continuing prosecution applications, requests for continuing examinations, divisions, registrations of any item in any of the foregoing categories (a);

(c)    all foreign patents, patent applications, and counterparts relating to any item in any of the foregoing categories (a) through (b), including, without limitation, certificates of invention, utility models, industrial design protection, design patent protection, and other governmental grants or issuances;

(d)    all rights to apply in any or all countries of the world for patents, certificates of invention, utility models, industrial design protections, design patent protections, or other governmental grants or issuances of any type related to any item in any of the foregoing categories (a) through (c), including, without limitation, under the Paris Convention for the Protection of Industrial Property, the International Patent Cooperation Treaty, or any other convention, treaty, agreement, or understanding;

(e)    all causes of action (whether known or unknown or whether currently pending, filed, or otherwise) and other enforcement rights under, or on account of, any of the Patents and/or any item in any of the foregoing categories (b) through (d), including, without limitation, all causes of action and other enforcement rights for

(i)    damages,
(ii)    injunctive relief, and
(iii)    any other remedies of any kind for past, current, and future infringement; and
(iv)    all rights to collect royalties and other payments under or on account of any of the Patents and/or any item in any of the foregoing categories (b) through (h).

(f)    all other rights not explicitly listed in (a) through (e) above as Jacklin Associates retains no rights, of any kind whatsoever to these patents.


Kobayashi Ventures, LLC

By: _____
Lisa Daniels, Manager


JACKLIN ASSOCIATES, INC

By: _____
John Irwin, President

## ASSIGNMENT OF PATENT RIGHTS

| Patent or Application No.<br>[Patent numbers] | Serial No.<br>For applications | Country<br>[Country] | Filing Date<br>[Filing date(s)] | Title of Patent and First Named Inventor<br>[Title of patent and name of first named inventor] |
|---|---|---|---|---|
|  |  |  |  |  |
| 5,821,990 |  | U.S. |  |  |
| 5,899,959 |  | U.S. |  |  |
| 6,363,621 |  | U.S. |  |  |
| 6,613,195 |  | U.S. |  |  |
| 6,207,020 |  | U.S. |  |  |
| 5,717,456 |  | U.S. |  |  |
| 6,211,905 |  | U.S. |  |  |

IN WITNESS WHEREOF this Assignment of Patent Rights is executed at _Radnor,_ _PA_ on _August 25, 2005_ .

ASSIGNOR:

Jacklin Associates

By: _John N Irwin_
Name: _John N Irwin_
Title: _President_
(Signature MUST be notarized)

STATE OF _PA_ )
                        ) ss.
COUNTY OF _Delaware_ )

On _August 25, 2005_ , before me _Nancy Vanning_ , Notary Public in and for said State, personally appeared _John N Irwin_ , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Nancy N Vanning_                    (Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Nancy N Vanning, Notary Public
Radnor Twp, Delaware County
My commission expires Aug 23, 2011

Jacklin Associates, Inc. hereby authorizes and requests the United States Patent and Trademark Office officials to continue to send all future correspondence pertaining to the Patents to said Assignee.

IN TESTIMONY WHEREOF, I have hereunto set my hand as of this _25 th_ day of _August_, 2008.

Jacklin Associates, Inc.

By: _[signature]_
_President_

On this _25_ day of _August_, 2008, personally appeared before me the above named President of Jacklin Associates, inc. to me known and known to me to be the person described in, and who executed, the foregoing instrument and acknowledged the same to be his free act and deed in and for the purposes set forth in said instrument.

(SEAL)

_[signature]_
NOTARY PUBLIC

My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Nancy N Vanning, Notary Public
Radnor Twp, Delaware County
My commission expires Aug 23, 2011

# EXHIBIT "2"

PATENT PURCHASE AGREEMENT

This Patent Purchase Agreement (this "Agreement") is entered into, as of the Effective Date (defined below), by and between International Paper Company, a New York corporation ("Seller") and Jacklin Associates, Inc., a Pennsylvania corporation ("Purchaser").

RECITALS

WHEREAS, Seller is the owner of record of certain patent rights;

WHEREAS, Seller wishes to sell to Purchaser all of Seller's right, title, and interest in such patent rights; and

WHEREAS, Purchaser wishes to purchase from Seller all of Seller's right, title, and interest in such patent rights, free and clear of any restrictions, liens, claims, and encumbrances.

NOW THEREFORE, upon such consideration as set forth herein and all other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.    Definitions

"Assigned Agreements" means those agreements set forth on Exhibit A ("Listed Agreements") or other agreements pursuant to which Seller has granted to any third party a license or covenant not to sue under the Assigned Patent Rights ("Unlisted Agreements"); provided, that if Seller is or becomes aware of any Unlisted Agreement, Seller shall promptly notify Purchaser and, 30 days thereafter, such agreement shall be deemed a Listed Agreement.

"Assigned Patent Rights" means (a) all patents listed on Exhibit B; (b) reissues, reexaminations, extensions; and (c) foreign patents and counterparts relating to any patent listed in Exhibit B, including, without limitation, certificates of invention, utility models, industrial design protection, design patent protection, and other governmental grants or issuances.

"Contract Year" means an annual period beginning on the Effective Date or anniversary of the Effective Date.

"Deliverables" means    prosecution history files for the Assigned Patent Rights and the files for the Assigned Agreements maintained by the Seller's Intellectual Property Legal Group.

"Effective Date" means the date set forth as the Effective Date on the signature page of this Agreement.

"Minimum Payment" has the meaning set forth in Paragraph 2.2(a).

"Net Royalty Collections" means the sum of all aggregate gross revenue or payments in-kind received by Purchaser in connection with the grant of any rights under any of the Assigned Patent Rights including without limitation from all license and/or royalty agreements (including, without limitation, the Assigned Agreements) during the Term, less all aggregate reasonable out-of-pocket costs (including, without limitation, fees and expenses for travel, attorneys, patent maintenance, third party experts and consultants and court costs) actually paid after the Effective Date by or on behalf of Purchaser in the reasonable and good faith furtherance of the negotiation or enforcement of royalty and/or license agreements (including, without limitation, the Assigned Agreements) for third party services performed after the Effective Date or the assertion and prosecution of infringement claims during the Term. Such out-of-pocket costs specifically do not include Purchaser's internal overhead such as Purchaser's salaries of employees and infrastructure.

"Seller's Net Royalty Payment" has the meaning set forth in Paragraph 2.2(a).

"Term" means the term of this Agreement, which shall begin on the Effective Date and end on the last to expire patent within the Assigned Patent Rights.

2.      Payments

2.1     Initial Payment. Within thirty (30) days after the Effective Date, Purchaser will pay to Seller Seventy-Five Thousand Dollars ($75,000.00) via certified or cashier's check sent to Seller's address set forth in Paragraph 8.6.

2.2     Ongoing Payments.

        (a)     During the Term, Purchaser may pay to Seller a minimum payment of Twenty-Five Thousand Dollars ($25,000.00) per Contract Year within thirty (30) days after the end of each Contract Year (each such payment, a "Minimum Payment"). The Minimum Payments shall be creditable against any other payments made by Purchaser to Seller pursuant to Paragraph 2.2(b). Notwithstanding the foregoing, if Seller's Net Royalty Payment exceeds the Minimum Payment in a Contract Year, each dollar over and above the Minimum Payment shall be credited against succeeding Contract Years' Minimum Payment requirement. When aggregate payments made by Purchaser under this Agreement to Seller equal or exceed Two Hundred Thousand Dollars ($200,000.00), Purchaser shall irrevocably, fully, and completely own all right, title, and interest in, to, and under the Assigned Patent Rights and all minimum payment requirements shall be fully satisfied. In the event that funds from Net Royalty Collections payable to Seller under the terms hereof are insufficient in any year to satisfy the Minimum Payment obligations, Purchaser may advance its funds to satisfy such Minimum Payment obligations. In the event that Purchaser advances its funds to satisfy the Minimum Payment obligations, Purchaser shall be entitled to recoup such advances from future Net Royalty Collections which would be distributable to Seller, it being understood that Purchaser's advances would be made to satisfy the annual Minimum Payment timing differences that might arise rather than as payments which would be in excess of Seller's percentage interest in Net Royalty Collections.

        (b)     During the Term, Purchaser will pay to Seller, within thirty (30) days after the end of each Contract Year, fifty percent (50%) of the aggregate Net Royalty Collections received by Purchaser during such Contract Year ("Seller's Net Royalty Payment").

        As an example:

| Year | 1 | 2 | 3 |
|---|---|---|---|
| Beginning Net | 0 | -50,000 | 0 |
| Amount obtained from licensees | 100,000 | 200,000 | 800,000 |
| Cost of collections, etc. | 125,000 | 125,000 | 100,000 |
| Payment of 50% Net to IP | 0 | 12,500 | 350,000 |
| Minimum Payment to IP | 25,000 | 12,500 | 0 |
| Ending Net | -50,000 | 0 | 0 |

        2.3     Statements and Payments. All payments hereunder shall be paid to Seller, without discount or offset, in United States of America Dollars. Accompanying each payment shall be a written report showing the computation of the payment with supporting information in sufficient detail for Seller to understand the basis for such computation. Payments and rendering of written statements shall be made at the address provided herein below or at such other

location as may be specified from time to time by notice in writing given to Purchaser by Seller. Acceptance by Seller of any payment tendered hereunder, whether or not the amount thereof shall be in dispute, shall not constitute acceptance of the account or written statement on which such payment is based.

2.4    Records.    Purchaser shall keep full, true and accurate books of accounts and other records containing all particulars which may be necessary to properly ascertain and verify the payments due and payable to Seller by Purchaser hereunder. Purchaser shall upon Seller's written request to Purchaser, permit Seller to examine or have examined, at reasonable times during regular business hours, such of Purchaser's business records as may be necessary to determine the accuracy of any written statement or payment.

3.    Transfer of Rights

Seller hereby sells, assigns, transfers, and conveys to Purchaser, free and clear of any and all restrictions, liens, claims, and other encumbrances, all of Seller's right, title, and interest in and to the following:

(i) the Assigned Patent Rights (Exhibit B) together with all causes of action (whether known or unknown, asserted or unasserted, or whether currently pending, filed, or otherwise) and other enforcement rights under, or on account of, any of the Assigned Patent Rights and any existing  rights to apply in any or all countries of the world for patents, certificates of invention, utility models, industrial design protections, design patent protections, or other governmental grants or issuances of any type. Within thirty (30) days of the Effective Date, Seller will execute and deliver to Purchaser executed and notarized assignments suitable for recording Purchaser's ownership in the applicable patent offices throughout the world in the form attached hereto (as to the United States) or equivalent form of assignment for other jurisdictions;

(ii) the Assigned Agreements together with the right to collect royalties, license fees or other payments under or on account of any of the Assigned Agreements. Within thirty (30) days of the Effective Date, Seller will notify, pursuant to the notice requirements under the Assigned Agreements, the parties to the Assigned Agreements of such transfer and, subsequent to such notice, Seller shall have no responsibility or obligations for any liability with respect to the Assigned Agreements, except to the extent any claims, demands or causes of action are the result of Seller's breaches of or defaults under the Assigned Agreements. Purchaser accepts no, and shall not have any, responsibilities or obligations of any kind with respect to any liability, claims, demands or causes of actions that may have accrued or existed under the Assigned Agreements, or otherwise, prior to the date notice is given under the Assigned Agreements but shall be responsible for such liability, claims, demands or causes of actions that accrue with respect to Listed Agreements subsequent to the date of such notice. Any correspondence from such parties to Seller shall be immediately forwarded to Purchaser. Notwithstanding the foregoing, with respect to any agreement of which Seller is unaware and which is an Unlisted Agreement on the Effective Date, (a) Seller's obligations with respect to the assignment thereof shall be limited to such assignment as is legally permissible and (b) to the extent such assignment is not legally permissible, Seller agrees to enforce such agreement as directed by Purchaser, at Purchaser's expense, pay all resulting proceeds to Purchaser, such expenses and proceeds then being treated as having been incurred by and accrued to Purchaser for purposes of Section 2.2 hereof.

4.    PARAGRAPH INTENTIONALLY DELETED

5.    Representations and Warranties of Seller

5.1    Seller hereby represents and warrants to Purchaser, as of the Effective Date, that (i) Seller is duly formed, validly existing, and in good standing under the laws of the jurisdiction of its formation, (ii) Seller is the owner of record of the Assigned Patent Rights, and (iii) Seller has all requisite power and authority to enter into, execute, and deliver this Agreement and perform fully its obligations hereunder.

5.2    Except as expressly provide in paragraph 5.1, Assigned Patent Rights and Assigned Agreements are assigned to Purchaser by Seller "AS IS". Seller makes no warranties or representations whatsoever with respect to

the Assigned Patent Rights and Assigned Agreements, including but not limited to. (i)a warranty of merchantability; (ii) a warranty of fitness for a particular purpose; (iii) a warranty that any particular result will be obtained through exercise of the rights granted hereunder;(iv) a warranty or representation as to the validity or scope of any Assigned Patent Rights; and (v) a warranty or representation that the Assigned Patent Rights or any use, license or sublicense thereof or any other exercise of the rights granted hereunder will be free of infringement of any patents or other proprietary rights of a third party.

6.    Representations and Warranties of Purchaser

Purchaser hereby represents and warrants to Seller, as of the Effective Date, that:

6.1    Purchaser is duly formed, validly existing, and in good standing under the laws of the jurisdiction of its formation.

6.2    Purchaser has all requisite power and authority to (i) enter into, execute, and deliver this Agreement and (ii) perform fully its obligations hereunder.

7.    License

7.1    License Grant. Subject to the terms and conditions of this Agreement, Purchaser hereby grants to Licensee a fully paid, perpetual, world wide, non-exclusive, nonsublicenseable, nontransferable license, under the Assigned Patent Rights, to make, have made, use, have used, sell, have sold, offer for sale, have offered for sale, have imported and import any product. Furthermore, where Licensee hereafter acquires a product from a third party vendor ("Vendor"), solely for Licensee's own internal business use but not for resale to or use by any other person, (a) Purchaser shall not enforce the Assigned Patents against such Vendor with respect to such product acquisition by Licensee and (b) Six Percent (6%) of the price paid by Licensee shall be credited against Purchaser's Minimum Payments otherwise due to Seller. As used in this subsection, "Licensee" means Seller and other entities as to which Seller possesses either majority voting control or, in the case of any entity in a foreign jurisdiction that prohibits, by law, majority control by a United States entity, the maximum percentage of control which is legally permitted.

7.2    No Other Rights. No right or license under any intellectual property rights is granted or shall be granted by either party by implication. All such rights or licenses are or shall be granted only as expressly provided in the terms of this Agreement.

8.    Miscellaneous

8.1    Limitation of Liability. NEITHER PARTY'S TOTAL LIABILITY UNDER THIS AGREEMENT WILL EXCEED ONE HALF OF THE PAYMENTS SET FORTH IN PARAGRAPHS 2.1 AND 2.2 OF THIS AGREEMENT.    THE PARTIES ACKNOWLEDGE THAT THE LIMITATIONS ON POTENTIAL LIABILITIES SET FORTH IN THIS PARAGRAPH 8.1 WERE AN ESSENTIAL ELEMENT IN SETTING CONSIDERATION UNDER THIS AGREEMENT.

8.2    Limitation on Consequential Damages. NEITHER PARTY WILL HAVE ANY OBLIGATION OR LIABILITY (WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING WITHOUT LIMITATION NEGLIGENCE) OR OTHERWISE, AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE (WHETHER ACTIVE, PASSIVE OR IMPUTED), REPRESENTATION, STRICT LIABILITY OR PRODUCT LIABILITY), FOR ANY INCIDENTAL, INDIRECT OR CONSEQUENTIAL, MULTIPLIED, PUNITIVE, SPECIAL, OR EXEMPLARY DAMAGES OR LOSS OF REVENUE, PROFIT, SAVINGS OR BUSINESS ARISING FROM OR OTHERWISE RELATED TO THIS AGREEMENT, EVEN IF A PARTY OR ITS REPRESENTATIVES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE PARTIES ACKNOWLEDGE THAT THESE EXCLUSIONS OF POTENTIAL DAMAGES WERE AN ESSENTIAL ELEMENT IN SETTING CONSIDERATION UNDER THIS AGREEMENT.

8.3    Compliance With Laws.  Notwithstanding anything contained in this Agreement to the contrary, the obligations of the parties with respect to the consummation of the transactions contemplated by this Agreement shall be subject to all laws, present and future, of any government having jurisdiction over the parties and this transaction, and to orders, regulations, directions or requests of any such government.

8.4    Confidentiality.  For a period of three (3) years from the Effective Date, the parties hereto will keep the terms and existence of this Agreement and the identities of the parties hereto and their affiliates, as well as all information (including but not limited to Common Interest Material), documents, materials and things exchanged and assigned as contemplated herein, including without limitation the Assigned Patent Rights, Assigned Agreements, and Deliverables, confidential and will not now or hereafter divulge any of this information to any third party except (a) with the prior written consent of the other party; (b) as otherwise may be required by law or legal process, including, without limitation, in confidence to legal and financial advisors in their capacity of advising a party in such matters or potential successors-in-interest or acquirers; (c) during the course of litigation, so long as the disclosure of such terms and conditions is restricted in the same manner as is the confidential information of other litigating parties; (d) in confidence to its employees, consultants, legal counsel, accountants, banks and financing sources and their advisors solely in connection with complying with its obligations under this Agreement; (e) by Purchaser, in order to perfect Purchaser's interest in the Assigned Patent Rights with any governmental patent office (including, without limitation, recording the Executed Assignments in any governmental patent office); or (f) to enforce Purchaser's right, title, and interest in and to the Assigned Patent Rights; provided that, in (b) and (c) above, (i) to the extent permitted by law, the disclosing party will use all legitimate and legal means available to minimize the disclosure to third parties, including, without limitation, seeking a confidential treatment request or protective order whenever appropriate or available; and (ii) the disclosing party will provide the other party with at least ten (10) days' prior written notice of such disclosure.  Without limiting the foregoing, Seller will cause its agents involved in this transaction to abide by the terms of this Paragraph 8.4, including, without limitation, ensuring that such agents do not disclose or otherwise publicize the existence of this transaction with actual or potential clients in marketing materials, or industry conferences.

8.5    Governing Law; Venue/Jurisdiction.  This Agreement will be interpreted, construed, and enforced in all respects in accordance with the laws of the State of New York, without reference to any choice or conflict of law principle that would result in the application of the laws of any State other than the State of New York.

8.6    Notices.  All notices given hereunder will be given in writing and will refer to Purchaser and to this Agreement and will be delivered to the address set forth below by (i) personal delivery, or (ii) delivery postage prepaid by the following international express courier services: FedEx, U.S.P.S., DHL or UPS.

| If to Purchaser | If to Seller |
|---|---|
| Jacklin Associates, Inc. | International Paper Company |
| Attention: President | Attention: Chief Counsel, Intellectual Property |
| 259 North Radnor Chester Road | 6285 Tri-Ridge Blvd. |
| Suite 210 | Loveland, OH 45140 |
| Wayne, Pennsylvania 19087 | |

Notices are deemed given on (a) the date of receipt if delivered personally or by express courier or, if such delivery refused, the date of refusal.  Either party may from time to time change its address for notices under this Agreement by giving the other party written notice of such change in accordance with this Paragraph 8.6.

8.7    Severability.  If any provision of this Agreement is found to be invalid or unenforceable, then the remainder of this Agreement will have full force and effect, and the invalid provision will be modified, or partially enforced, to the maximum extent permitted to effectuate the original objective.

8.8    Waiver. Failure by either party to enforce any term of this Agreement will not be deemed a waiver of future enforcement of that or any other term in this Agreement or any other agreement that may be in place between the parties.

8.9    Successors and Assigns. Each party may sell, transfer, assign, delegate, pledge or otherwise dispose of this Agreement as such party, in its sole discretion, deems fit. Any assignment inconsistent with this Paragraph 8.9 shall be null, void, and of no effect. All validly assigned and delegated rights and obligations of the parties hereunder shall be binding upon and inure to the benefit of and be enforceable by and against the successors and permitted assigns of each of the parties, as the case may be.

8.11    Independent Contractors. Seller and Purchaser are independent contractors. Neither Seller nor Purchaser nor their respective employees, members, consultants, contractors or agents are agents, fiduciaries, employees or joint venturers of the other party, nor do they have any authority to bind the other party by contract or otherwise to any obligation.

8.12    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument. One or more copies of this Agreement may be executed but it shall not be necessary, in making proof of the existence of this Agreement, to provide more than one original copy. Facsimile signatures shall be acceptable to render this agreement binding, but those providing facsimile signatures shall follow up with original signatures by mail within a reasonable time.

8.13    Payment of Maintenance Fees. Subject to this subsection, the payment of maintenance fees of any patent within the scope of any Assigned Patent Rights shall be the responsibility of Purchaser. In the event that Purchaser decides to discontinue the payment of maintenance fees of any patent within the scope of any Assigned Patent Rights, then all right, title and interest in such patent shall forthwith and automatically revert to Seller. Purchaser shall, within at least four (4) months before the date of any payment due, provide to Seller written notice of such decision, and shall maintain any such Assigned Patent Rights in active status up to such date of payment. Upon receipt of such notice, Seller shall have the right but shall have no obligation, to take any action at its own expense, required to such Assigned Patent Right in active status. If Seller upon receipt of such notice, decides to maintain the said patent or patent application in active status, Purchaser shall, at the written request and expense of Seller, give assistance and information as it can reasonably supply from its records, and shall execute or cause to be executed such documents as Seller may reasonably required to maintain the active status of said Assigned Patent Rights in the name of Seller.

8.14 Revocation of Sale of Assigned Patents and Assigned Agreements. If Purchaser shall fail to pay any annual minimum payment when due, then Seller, may at its option, and in addition to any other remedies which it may have at law or in equity, revoke the sale of Assigned Patent Rights and Assigned Agreements to Purchaser by giving written notice thereof to Purchaser to such effect. In that event, the entire right, title and interest in and to the said Assigned Patent Rights and Assigned Agreements shall automatically revert to Seller. Within thirty (30) days after revocation of this Agreement, Purchaser shall submit to Seller a report in accordance with the provisions of paragraph 2.3 for the Contract Year in which revocation took place and therewith shall remit the amount of Seller's Net Royalty Payment then due for such Contract Year, if any and thereafter Purchaser shall have no responsibility or obligations with respect to the Assigned Agreements or payments, minimum or otherwise, of any kind or amount.

8.15    Miscellaneous. This Agreement, including its exhibits, constitutes the entire agreement between the parties with respect to the subject matter hereof and merges and supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions. Neither of the parties will be bound by any conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof other than as expressly provided herein. The paragraph headings contained in this Agreement are for reference purposes only and will not affect in any way the meaning or interpretation of this Agreement. No amendments or modifications will be effective unless in a writing signed by authorized representatives of both parties.

*[Signature Page Follows]*

In witness whereof, intending to be legally bound, the parties have executed this Patent Purchase Agreement as of the Effective Date.

SELLER:                                          PURCHASER:

International Paper Company                       Jacklin Associates, Inc.

By:_____               By:_____

Name:_____               Name:_____

Title:_____               Title:_____

Effective Date:  August _____, 2007

EXHIBIT A

ASSIGNED AGREEMENTS

Carotek
Monitoring Technology Corporation
Sensodec-OY
Papertech

EXHIBIT B

ASSIGNED PATENTS

| Patent or Application No. | Serial No. | Country | Filing Date | Title of Patent and First Named Inventor |
|---|---|---|---|---|
| [Patent numbers] | For applications | [Country] | [Filing date(s)] | [Title of patent and name of first named inventor] |
| 5,821,990 | | U.S. | | |
| 5,899,959 | | U.S. | | |
| 6,363,621 | | U.S. | | |
| 6,613,195 | | U.S. | | |
| 6,207,020 | | U.S. | | |
| 5,717,456 | | U.S. | | |
| 6,211,905 | | U.S. | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

EXHIBIT C

<u>DELIVERABLES</u>

Seller will cause the following to be delivered to Purchaser, or Purchaser's representative prior to or at the Effective Date:

Agreement Files and Prosecution History Files maintained in Seller's Law Department.

EXHIBIT D
## ASSIGNMENT OF PATENT RIGHTS

For good and valuable consideration, the receipt of which is hereby acknowledged, International Paper Company, a New York corporation ("Assignor"), does hereby sell, assign, transfer, and convey unto Jacklin ("Assignee"), or its designees, all right, title, and interest that exist today and may exist in the future in and to any and all of the following (collectively, the "Patent Rights"):

(a)     the provisional patent applications, patent applications and patents listed in the table below (the "Patents");

(b)     all reissues, reexaminations, extensions, continuations, continuations in part, continuing prosecution applications, requests for continuing examinations, divisions, registrations of any item in any of the foregoing categories (a);

(c)     all foreign patents, patent applications, and counterparts relating to any item in any of the foregoing categories (a) through (b), including, without limitation, certificates of invention, utility models, industrial design protection, design patent protection, and other governmental grants or issuances;

(d)     all rights to apply in any or all countries of the world for patents, certificates of invention, utility models, industrial design protections, design patent protections, or other governmental grants or issuances of any type related to any item in any of the foregoing categories (a) through (c), including, without limitation, under the Paris Convention for the Protection of Industrial Property, the International Patent Cooperation Treaty, or any other convention, treaty, agreement, or understanding;

(e)     all causes of action (whether known or unknown or whether currently pending, filed, or otherwise) and other enforcement rights under, or on account of, any of the Patents and/or any item in any of the foregoing categories (b) through (d), including, without limitation, all causes of action and other enforcement rights for

(i)      damages,
(ii)     injunctive relief, and
(iii)    any other remedies of any kind for past, current, and future infringement; and
(iv)     all rights to collect royalties and other payments under or on account of any of the Patents and/or any item in any of the foregoing categories (b) through (h).

| Patent or Application No. | Serial No. | Country | Filing Date | Title of Patent and First Named Inventor |
|---|---|---|---|---|
| [Patent numbers] | For applications | [Country] | [Filing date(s)] | [Title of patent and name of first named inventor] |
| 5,821,990 | | U.S. | | |
| 5,899,959 | | U.S. | | |
| 6,613,195 | | U.S. | | |
| 6,207,020 | | U.S. | | |
| 5,717,456 | | U.S. | | |
| 6,211,905 | | U.S. | | |

MAR-19-1996  05:55                                                                    P.02/02

Assignor represents warrants and covenants the above as set forth in Paragraphs 5.1 and 5.2.

IN WITNESS WHEREOF this Assignment of Patent Rights is executed at *Loveland OH* on ____
*10-19-2007*

ASSIGNOR:

INTERNATIONAL PAPER COMPANY

By: _____

Name: *NORMAN MARSOLAN*

Title: *DIRECTOR, R&D*

*(Signature MUST be notarized)*

STATE OF *OHIO*                )
                              } ss.
COUNTY OF *CLERMONT* )

On *10-19-2007* before me, *JANE A. Tomlinson*, Notary Public in and for said State, personally appeared *NORMAN MARSOLAN*, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____          (Seal)



Jane A. Tomlinson
Notary Public, State of Ohio
My Commission Expires
June 19, 2012